CONSOLIDATED INDUSTRIES, INC., ET AL.,[1] PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 20523–80, 20524–80, 20526–80.     Filed March 15, 1984.

*Chester M. Howe,* for the petitioners.
*Pamela V. Gibson,* for the respondent.

## OPINION

NIMS, *Judge*: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income tax as follows:

---

[1]Cases of the following petitioners are consolidated herewith: Joseph C. Valentine and Shirley R. Valentine, docket No. 20524–80; Ronald J. Clayton and Jane H. Clayton, docket No. 20526–80.

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 20523–80 | Consolidated Industries, Inc. | 1975 | $276,334 |
| 20524–80 | Joseph C. Valentine | 1975 | 11,865 |
| | and Shirley R. Valentine | 1976 | 613,722 |
| 20526–80 | Ronald J. Clayton | 1976 | 293,561 |
| | and Jane H. Clayton | | |

After concessions, the issue remaining for decision is whether an accrual method corporate taxpayer may deduct in 1976 additional State tax due for 1976 as a result of a 1983 adjustment to its 1976 Federal taxable income.

All of the facts have been stipulated and are found accordingly.

Petitioners Clayton and Valentine resided in Connecticut at the time the petitions in these cases were filed. Petitioner Consolidated Industries, Inc. (Consolidated), had its principal office in Cheshire, Conn., at the time its petition herein was filed.

Consolidated is an accrual method taxpayer which elected subchapter S status for 1976. Of the 30 shares of Consolidated stock issued and outstanding in 1976, 20 were owned by Valentine and 10 were owned by Clayton. Valentine and Clayton were officers of the company as well as stockholders.

Consolidated claimed a substantial deduction for salaries paid to Valentine and Clayton on its Federal income tax return for 1976. Consolidated also claimed the same deduction in computing its Connecticut corporation business tax.

In deficiency notices dated August 14, 1980, respondent disallowed part of Consolidated's deduction for salaries as unreasonable compensation, increasing Consolidated's undistributed taxable income for 1976. Deficiencies were consequently determined against petitioners Valentine and Clayton as the shareholders of Consolidated. On November 10, 1980, petitioners Valentine and Clayton filed petitions in this Court disputing the deficiencies. In their petitions, they asserted that the "Commissioner erroneously determined that officers' salary paid to [petitioners] amounted to unreasonable compensation."

Approximately 2½ years later, on April 27, 1983, the parties filed a stipulation of facts with this Court which indicated that they had settled the unreasonable compensation issue. The

parties had agreed that approximately 37 percent of the original compensation deduction should be disallowed.

Connecticut's corporate taxpayers calculate the State corporation business tax pursuant to a "piggy-back" system whereby federally defined taxable income serves as the base figure. If Federal officials in any later year adjust taxable income for a previous year, Connecticut corporations are required to file an amended return with Connecticut tax authorities reporting the adjustments made. Conn. Gen. Stat. Ann. sec. 12–226 (West 1958).[2]

On December 30, 1982 (prior to the settlement of the compensation issue), Consolidated filed such an amended return with Connecticut's tax commissioner. The amended return showed an additional tax liability owing to Connecticut by virtue of the upward adjustment in Federal taxable income for 1976 resulting from disallowance of part of Consolidated's deduction for officers' salaries. This additional liability was paid by check dated December 23, 1982.

At no time did Connecticut ever conduct an audit, propose a deficiency, or receive a protest with respect to Consolidated's 1976 State tax liability.

Petitioners contend that they are entitled to deduct the additional State tax owing to Connecticut in recomputing Consolidated's undistributed taxable income for 1976. This would, of course, mitigate petitioners' Federal deficiencies for 1976 which arose from disallowance of a portion of Consolidated's deduction for compensation paid to petitioners.

Respondent opposes the 1976 deduction on two grounds: (1) The liability for the additional State tax was not fixed in 1976 under the "all events" test of *United States v. Anderson*, 269 U.S. 422 (1926); and (2) even if the liability were fixed under that test, it is not deductible in 1976 because the underlying liability was contested. *Dixie Pine Products Co. v. Commissioner*, 320 U.S. 516 (1944). We agree with respondent's second argument for the reasons set out below.

A taxpayer using the accrual method of accounting may deduct expenses only when "all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Sec.

---

[2]This obligation is not subject to a statute of limitations. See *Charlton Press, Inc. v. Sullivan*, 153 Conn. 103, 214 A.2d 354 (1965).

1.461-1(a)(2), Income Tax Regs.; *United States v. Anderson,
supra.* State income taxes ordinarily constitute a deductible
expense. Sec. 164(a)(3).[3]

Absent a contest, a subsequent adjustment by tax authori-
ties to a deduction accrued in an earlier year must be accrued
to that earlier year in which the events occurred to fix the fact
and amount of the liability. *Keller-Dorian Corp. v. Commis-
sioner,* 153 F.2d 1006, 1007 (2d Cir. 1946); *Uncasville Mfg. Co.
v. Commissioner,* 55 F.2d 893, 895 (2d Cir. 1932); *Hollingsworth
v. United States,* 215 Ct. Cl. 328, 337–338, 568 F.2d 192, 197
(1977); *Dravo Corp. v. United States,* 172 Ct. Cl. 200, 206, 348
F.2d 542, 546 (1965).[4]

If the subsequent adjustment is contested, however, accrual
of the deduction must be deferred until either the dispute is
resolved or the liability is paid. *Dixie Pine Products Co. v.
Commissioner, supra*; sec. 461(a); sec. 461(f).[5]

The regulations provide that "A contest arises when there is
a bona fide dispute as to the proper evaluation of the law or
the facts necessary to determine the existence or correctness of
the amount of an asserted liability." Sec. 1.461–2(b)(2), Income
Tax Regs. The liability at issue here is one owing to the State
of Connecticut. As noted previously, petitioners have not

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in
effect for the year in issue.

[4]Sec. 1.461–1(a)(2), Income Tax Regs., is not to the contrary. The regulation provides: "Where a
deduction is properly accrued on the basis of a computation made with reasonable accuracy and
the exact amount is subsequently determined in a later taxable year, the difference, if any,
between such amounts shall be taken into account for the later taxable year in which such
determination is made."

This passage addresses a subsequent adjustment to a deduction *properly* accrued in the earlier
year. The "all events" standard requires only that the amount of a fixed liability be determinable
with "reasonable accuracy" before a deduction may be accrued. It is inevitable that subsequent
adjustments may be necessary.

In the cases cited above, and in the case before us here, the subsequent adjustments were made
not to correct the error inherent in estimation, but to redetermine a deduction *improperly* accrued
in the earlier year.

[5]In *Dixie Pine Products Co. v. Commissioner,* 320 U.S. 516 (1944), the Supreme Court established
the rule of tax accounting which bars the accrual of a deduction for a liability while the liability is
being contested. In *United States v. Consolidated Edison Co. of N.Y.,* 366 U.S. 380 (1961), the
Supreme Court applied this rule to preclude the deduction of a contested liability even though the
liability had been paid under protest.

Congress rejected the *Consolidated Edison* extension of the *Dixie Pine Products* principle in 1964
when sec. 461(f) was enacted to permit, under certain conditions, the deduction of a contested
liability in the year it is paid.

The issue before us in this case does not concern the applicability of sec. 461(f). It is undisputed
that the State tax liability in question here was not paid in 1976, and the issue presented to us
concerns only the deductibility of that liability in 1976.

disputed with Connecticut their liability for additional State income tax.

This fact does not, however, determine the question before us. If the Connecticut tax liability is inextricably related to, and dependent upon, the Federal determination of the compensation issue, it may be that a protest of the Federal liability is a protest of the State liability. *Curran Realty Co. v. Commissioner*, 15 T.C. 341, 344 (1950); *Colt's Manufacturing Co. v. Commissioner*, 35 T.C. 78, 88–89 (1960), revd. on other grounds 306 F.2d 929 (2d Cir. 1962); *Chesbro v. Commissioner*, 21 T.C. 123, 130 (1953), affd. 225 F.2d 674 (2d Cir. 1955).

On the other hand, if the Federal and State determinations are substantially independent, contest of one liability ought not constitute a contest of the other liability. *Hollingsworth v. United States*, 215 Ct. Cl. at 348, 568 F.2d at 203 (1977).

Accordingly, an examination of Connecticut's corporation business tax structure is in order. Connecticut imposes a franchise tax of 10 percent of net income on companies carrying on business within the State. Conn. Gen. Stat. Ann. sec. 12–214. "Net income" is defined in relevant part as "net earnings received during the income year * * * computed by subtracting from gross income the deductions allowed by the terms of section 12–217." Conn. Gen. Stat. Ann. sec. 12–213 (West 1958).

"Gross income" is defined in relevant part to mean "gross income as defined in the federal corporation net income tax law in force on the last day of the income year." Conn. Gen. Stat. Ann. sec. 12–213 (West 1958). Correspondingly, the deductions allowed against gross income by section 12–217 are "all items deductible under the federal corporation net income tax law effective and in force on the last day of the income year." Conn. Gen. Stat. Ann. sec. 12–217(a) (West 1958).[6] The interrelationship of State and Federal taxation is further cemented by the requirement that if any official or agency of the United States adjusts, changes, or corrects a corporation's income, the corporation must submit an amended return to Connecticut's commissioner of internal revenue disclosing such adjustments. Conn. Gen. Stat. Ann. sec. 12–226 (West 1958).

---

[6]Certain specialized exceptions are included, none of which are relevant here.

Federal tax liability and Connecticut tax liability thus inevitably move in tandem. Accordingly, contest of a Federal tax deduction is effectively a contest of the State tax liability. Indeed, failure or success of the Federal contest determines the State liability. Here, there can be no dispute that petitioners contested respondent's adjustment to Consolidated's Federal deduction for officers' salaries. We therefore view both the State and Federal deductions as contested.

Faced with these same facts, this Court has denied accrual of additional State tax in the year to which it relates where the increase arose out of a subsequently contested adjustment to Federal taxable income. In *Curran Realty Co. v. Commissioner, supra,* the Commissioner increased the taxpayer's Federal income for 1946 and 1947. The Commissioner then sought to deny the taxpayer "larger deductions for the Massachusetts excise tax to include that which would be applicable to the increased income." 15 T.C. at 344. We held that additional Massachusetts tax would be deductible in 1946 and 1947 only to the extent that the underlying Federal adjustments were not contested:

One of those adjustments, the disallowance of a deduction for an officer's salary, was contested by the petitioner. The increased Massachusetts tax on the additional net income resulting from the disallowance of that deduction was not accruable or deductible in 1946 or 1947. *Security Flour Mills Co. v. Commissioner,* 321 U.S. 281. The Commissioner * * * has not shown that the petitioner disputed any other proper adjustment and the additional Massachusetts tax based on those adjustments was properly allowed as a deduction. [15 T.C. at 344.]

We applied this same reasoning in two subsequent decisions involving similar facts. See *Colt's Manufacturing Co. v. Commissioner, supra* (Connecticut excise tax); *Chesbro v. Commissioner, supra* (New York franchise tax). In *Chesbro,* we stated the rule as follows:

The corporation, using an accrual method of accounting, is entitled to accrue additional franchise tax based upon any adjustment made by the Commissioner increasing its income which is proper and which it has not contested, but it is not entitled to accrue franchise tax on additional income * * * added by the Commissioner and contested by the taxpayer. [21 T.C. at 130.]

Petitioners direct our attention to *Hollingsworth v. United States, supra,* in which the Court of Claims refused to treat a

Federal tax liability as contested even though the taxpayer had protested the same issue to the State tax authority. In *Hollingsworth*, however, the Federal and State authorities had commenced entirely separate and independent investigations, each "wholly unconcerned with [the taxpayer's] liability to another [authority]." 568 F.2d at 203.[7]

Petitioners also contend that the regulations implementing section 461(f) compel a finding in their favor. Section 1.461–2(b)(2), Income Tax Regs., defines the term "contest" and includes the following language:

An affirmative act denying the validity or accuracy, or both, of an asserted liability to the person who is asserting such liability, such as including a written protest with payment of the asserted liability, is sufficient to commence a contest.

Petitioners emphasize that no protest has ever been lodged with Connecticut, the "person who is asserting [the tax] liability" at issue here.

By virtue of Connecticut's "piggy-back" tax system, however, a liability asserted by the Federal Government is asserted mutatis mutandis, by the State government. It follows that when petitioners dispute an adjustment to a Federal deduction, they are in effect contesting two deductions. It should make no difference that Connecticut, in keeping with its system of administrative convenience, has delegated resolution of the dispute to the Federal forum.

Moreover, the language of the regulation indicates only what actions are *"sufficient"* to commence a contest. The language of the regulation does not purport to be exhaustive.

Finally, petitioners contend that Connecticut's tax structure is *not* so related to the Federal system that contest in one forum constitutes a contest in the other. Petitioners argue that Connecticut is not bound by the Federal determination, and, indeed, has provided its tax commissioner with the power to

---

[7]Petitioners also rely on *Uncasville Mfg. Co. v. Commissioner*, 55 F.2d 893 (2d Cir. 1932). It is true that *Uncasville* involved circumstances very similar to this case. The Second Circuit permitted a Connecticut corporation to accrue in 1918 an additional State tax liability which was generated in a later year by Federal adjustments to its 1918 income. The court indicated that the company filed petitions to review the Commissioner's asserted deficiencies and thus it appears that the Federal adjustments may have been contested.

*Uncasville*, however, was decided in 1932, well before the "no contest" rule of accrual tax accounting was established by the Supreme Court in *Dixie Pine Products*. As such, the Second Circuit's decision in *Uncasville* cannot govern our decision in this case.

examine and correct returns. Conn. Gen. Stat. Ann. secs. 12–226, 12–233.

While this may be true, our analysis remains the same. Any examination by Connecticut's commissioner of internal revenue presumably would seek to verify compliance with Connecticut law. As noted previously, Connecticut incorporates Federal corporate tax law and requires the filing of an amended State return if Federal authorities adjust income in any later year. The Connecticut commissioner must ascertain only that properly accrued *Federal* deductions are reported to Connecticut. The identity of the State and Federal deductions is unaffected by the technical power of the Connecticut commissioner to make an independent examination. Accordingly, we must find that Consolidated may not accrue in 1976 the additional State tax at issue here because the deduction underlying the increased tax was contested.

*Decisions will be entered under Rule 155.*